**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT DOUGLAS,<br><br>                Plaintiff,<br><br>vs.<br><br>MICHAEL SMELOSKY, WARDEN; *et al.*,<br><br>                Defendants. | CASE NO. 10-cv-1464-GPC (BGS)<br><br>**REPORT AND RECOMMENDATION DENYING IN PART AND GRANTING IN PART DEFENDANT VALENZUELA'S MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 66.] |

## I. INTRODUCTION

Plaintiff Robert Douglas, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Complaint on July 12, 2010, pursuant to 42 U.S.C. §1983 against Defendants Smelosky, Walker, and Valenzuela . ("Compl.", ECF No. 1.)  Following the District Court's adoption of the Magistrate Judge's June 17, 2011 Report and Recommendation on Defendants' motion to dismiss, only Plaintiff's claim for violation of his Eighth Amendment right to be free from cruel and unusual punishment against Defendant Lieutenant Valenzuela in his individual capacity survived.[1] (*See* ECF No. 18 at 3.)

---

[1] Plaintiff was given leave to amend his claim against Defendant Smelosky, but opted not to do so. (*See* ECF No. 18 at 3.)  Defendant Walker was never served with the Complaint. (*Id.*)

Specifically, Plaintiff's Complaint alleges Defendant Valenzuela violated his Eighth Amendment right to be free from cruel and unusual punishment when Valenzuela locked Plaintiff in an unventilated hot van and allowed him to be forced, bare-chested, against a hot wall by another guard. (ECF. No. 1.)

On January 30, 2014, Defendant Valenzuela filed a motion for summary judgment.[2] (ECF No. 66.) Plaintiff filed a response in opposition on March 28, 2014. (ECF. No. 69.) Defendant Valenzuela did not file a reply. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation ("R&R"). For the reasons set forth below, the Court **RECOMMENDS** that Defendant Valenzuela's motion for summary judgment be **DENIED IN PART and GRANTED IN PART.**

## II. PROCEDURAL HISTORY

On September 30, 2011, Defendant Valenzuela filed an answer to the Complaint. (ECF. No. 20.) On July 20, 2012, Defendant Valenzuela filed a motion for summary judgment, which was later withdrawn to allow Plaintiff to present supplemental evidence and conduct additional discovery. (ECF. Nos. 41, 52, 53 and 55.) The supplemental evidence that Plaintiff submitted for the Court's consideration included a weather report[3] and a letter.[4] On March 11, 2013, the Court issued an order accepting the filing of these

---

[2] Defendant provided a *Rand* notice with his motion for summary judgment, which was served upon Plaintiff. (ECF. No. 66-2.)

[3] The weather report provides the temperature history for Imperial, California on Tuesday, July 8, 2008 – the day Plaintiff was allegedly locked in a hot van and held against a hot wall. (ECF No. 55; ECF No. 1.) On the report, Plaintiff has circled the time the events allegedly took place, between 2:53 and 3:53. According to the report, the outside temperature at this time was between 109 and 111 degrees Fahrenheit. IT IS RECOMMENDED that the Court take judicial notice of this evidence pursuant to Fed. R. Evid. 201 because the weather report is (1) not subject to reasonable dispute and (2) can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned.

[4] The contents of this letter repeat Plaintiff's account of the incident. The letter appears to be written by someone from within the prison administrative system, but it is not signed and its content is not attributed to any author. Plaintiff refers to the author as a "whistle blower" and claims the author did not make themselves known due to fear of retaliation. (ECF No. 69 at 5-A.) Without an attending declaration, signature or even an attributable author, this letter does not satisfy the authentication requirements of Fed. R. Evid. 901, which requires evidence sufficient to support a finding that the item is what the proponent claims it is. Pursuant to Fed. R. Civ. P. 56(e), the Court cannot consider this type of unauthenticated evidence on a motion for summary judgment.

documents. (ECF No. 56.)

On June 13, 2013, Plaintiff filed a second motion for leave to file supplemental documents. (ECF No. 58.) In the second motion, Plaintiff attached an interview transcript from a KGTV ABC 10 news segment.[5] (*Id*.) The transcript recounts an interview between a reporter and an unidentified prison guard who was working at Centinela State Prison on the day in question.[6] (*Id*.) On June 17, 2013, the Court ordered Defendant Valenzuela to respond to Plaintiff's second request for additional discovery and motion for leave to file supplemental documents. (ECF No. 59.) On June 24, 2013, Defendant Valenzuela filed a response in opposition to Plaintiff's motion for leave to submit supplemental documents objecting to the transcript on the grounds of foundation, relevance, hearsay, and improper opinion testimony. (ECF No. 60.)

On September 30, 2013, the Court issued an order re-opening discovery for a limited period of time and requiring Defendant to withdraw their pending motion for summary judgment without prejudice to refiling after the close of the new discovery period. (ECF. No. 61.) Defendant complied (ECF No. 62), and on January 30, 2014 filed a new motion for summary judgment which is the subject of the instant Report and Recommendation. (ECF No. 66.)

///
///
///
///

---

[5] According to the transcript, an unidentified prison guard alleges that Plaintiff was confined in the van, with "no windows cracked" and "no ventilation", for roughly an hour. (Doc. No. 58.) The transcript also says Plaintiff was "banging on the inside" of the van and yelling "let me out, I can't breath." (*Id*.) In the transcript, two unidentified prison guards also confirm the availability of two isolation cells at the time of the incident. This suggests confinement in the van may not have been necessary. Plaintiff requested a declaration from the reporter in order to verify the information in the news segment. (Doc. No. 69 at 21.) The reporter and the legal department for the news station, however, declined Plaintiff's request. (*Id*. at 24.) As such, this transcript lacks authentication and cannot be considered on a motion for summary judgment pursuant to Fed. R. Civ. P. 56(e).

[6] This transcript is from a short news clip and article which can be found at the following web address: http://www.10news.com/news/guard-says-inmate-at-california-prison-was-abused

### III.  FACTUAL BACKGROUND

The Court has reviewed the parties' briefing and exhibits and finds the following facts are undisputed:

**A.     Undisputed Facts**

On June 29, 2008, a large race-riot involving approximately 105 Black and Hispanic inmates occurred in Facility A at Centinela State Prison. (ECF No. 41-3.) As a result of the riot, all inmates in Facility A were placed on a modified program (commonly referred to as a "lock-down") and prison personnel performed a large-scale investigation. (*Id.* at 4.) The investigation included a thorough cell-by-cell search of every housing unit in Facility A. (*Id.*) Facility A is so large that this search required officers from a nearby prison to assist, and the search took a full day to complete. (*Id.*)  During the search, Plaintiff was housed in Facility A in building A2 at Centinela State Prison. (*Id.* at 5.)  On July 8, 2008, housing unit A2 was searched from 08:30 to 17:00 hours. (*Id.* at 6.)

The July 8, 2008, search required a specialized Crisis Response Team ("CRT") to provide safety and security in the prison housing unit. (*Id.* at 8.)  Defendant Valenzuela was the tactical leader for this CRT. (*Id.*) In his capacity as tactical leader, Defendant Valenzuela supervised the CRT officers during the search. (*Id.*) The officers were responsible for individually escorting all inmates from their cells to a staging area located outside the building and then back inside again. (*Id.* at 9.)  The Investigative Services Unit ("ISU") assisted with searching the inmate's cells, and gang investigators assisted by searching, photographing, and interviewing inmates in an outside staging area. (*Id.*) Defendant Valenzuela's duties on July 8, 2008, included maintaining the overall safety and security of inmates, the safety of the staff and officers, as well as escorting inmates in and out of the building, handling inmate disciplinary issues as they arose, and supervising the members of the CRT unit. (*Id.* at 11.)

///

///

///

**B.     The Facts in Dispute**

The parties offer different versions of the following events, which occurred on the day of the search.

**I.     Defendant's Version**

On July 8, 2008, an officer notified Defendant Valenzuela that Plaintiff refused to follow instructions and was complaining about the search.  (ECF No. 66-3 at 12.) Defendant asked the officer to bring Plaintiff outside so that Defendant could verbally warn and counsel Plaintiff regarding his behavior.  (*Id.*)  Defendant told Plaintiff to calm down and follow orders because Plaintiff's actions were a safety and security risk.  (*Id.* at 13.) Plaintiff responded positively, said he understood, and Defendant Valenzuela ordered the officer to escort Plaintiff back inside.  (*Id.*)

Sometime later, an officer notified Defendant Valenzuela that Plaintiff again refused to cooperate.  (*Id.* at 14.)  According to Defendant, Plaintiff was questioning the search in front of other inmates, being loud, and turning to watch the search despite orders not to do so. (*Id.*)  Defendant again counseled Plaintiff about his behavior and gave him another warning. (*Id.*) Plaintiff again seemed receptive, so Defendant told the officer to escort Plaintiff back inside.  (*Id.*)  At this point, Defendant Valenzuela contends that he did not force Plaintiff against any wall and does not recall seeing Plaintiff being forced against a wall. *(Id.)*

Later in the afternoon, someone from ISU contacted Defendant Valenzuela and told him they were going to search Plaintiff's cell again because Plaintiff and his cell-mate were yelling and throwing papers out of their cell.  (*Id.* at 15.)  In response, Defendant instructed members of the CRT to conduct an unclothed body search of Plaintiff and his cell-mate and bring them both outside to the staging area.  (*Id.*)  Once outside in the staging area, Defendant Valenzuela spoke to Plaintiff, who this time, was not receptive to counseling and acted agitated, hostile and disruptive.  (*Id.* at 16.)

According to Defendant Valenzuela, Plaintiff's behavior began to disrupt the gang investigations taking place in this same staging area. (*Id.*) Defendant feared Plaintiff's

1  behavior would further incite the other inmates to "act up." (*Id.*) Defendant, "based on [his]
2  training and experience, knew that [he] needed to get Plaintiff away from the area," but
3  could not take him inside the building because inmates were also inside the building. (*Id.*)
4  At this time, an officer informed Defendant that there was a holding cell in a van parked
5  behind them. (*Id.*) Defendant decided to temporarily place Plaintiff in the van hoping
6  Plaintiff would calm down and stop inciting inmates. (*Id.* at 16-17.) Defendant maintains
7  that the van was the closest and safest containment area available.[7] (*Id.* at 17.)

California Department of Corrections and Rehabilitation ("CDCR") policy requires
completion of a holding cell log sheet whenever an inmate is placed in a holding cell.
(ECF No. 66-3 at 20.) When Defendant placed Plaintiff in the van, Officer Reyes prepared
and signed the holding cell log sheet. (*Id.* at Ex. B.) Defendant Valenzuela also signed the
sheet as the supervisory reviewer. (*Id.*) The sheet indicates that Plaintiff was placed in the
van at 16:10 and released at 16:25, for a total of fifteen minutes spent inside. (*Id.*) The
sheet also indicates that Officer Reyes checked on Plaintiff every five minutes and that
Plaintiff was standing at each checkup. (*Id.*) The sheet does not indicate whether the van
doors were open or closed while Plaintiff was inside. (*Id.*)

Defendant Valenzuela returned to the van to speak with Plaintiff around 16:25. (*Id.* at 21.) According to Defendant, Plaintiff's demeanor appeared improved and Defendant ordered an officer to return Plaintiff to his cell. (*Id.*) At this time, Defendant states that he did not mock, tease, taunt, or threaten Plaintiff, nor did he witness anyone else do the same. (*Id.*) Someone from the CRT eventually escorted Plaintiff back to the building, and sat Plaintiff down on a bench in the dayroom. (*Id.* at 23.) Minutes later, Defendant saw Plaintiff slide off the bench and lie sideways on the ground. (*Id.* at 24.) Defendant immediately instructed staff to sound an alarm and remove Plaintiff's restraints for

---

[7]The van was a former bread-company truck similar in size to a UPS box van with enough room to stand straight up inside the back of the van. (ECF No. 66-3 at 18.) The van has two front-side doors and a back door. (*Id.* at 3-4.) Defendant Valenzuela states that he placed Plaintiff in one of the two holding cells in the van, and the doors were left open. (*Id.* at 18.) Valenzuela did not have time to watch Plaintiff, so he ordered another officer, Officer Reyes, to watch Plaintiff. (*Id.* at 20.) Defendant Valenzuela does not indicate which doors were left open while Plaintiff was confined in the squad van.

treatment and examination purposes. (*Id.*) Plaintiff was taken to a medical facility and returned to the housing unit a few hours later. (*Id.*)

### ii. Plaintiff's Version

According to Plaintiff, the incident began when an officer accused Plaintiff of refusing to comply with direct orders on July 8, 2008. (ECF No. 1.) Because of Plaintiff's alleged disobedience, the officer escorted Plaintiff outside where the officer forced Plaintiff against the housing unit wall, bare-chested, for five to ten minutes. (ECF No. 39 at 1, 4.) The outside temperature at the time was between 100 and 110 degrees Fahrenheit and the wall would have been extremely hot. (ECF No. 55.) Plaintiff alleges that at this time, the officer, Defendant Valenzuela, and SWAT personnel all mocked him about how hot the wall was and how it must burn his chest. (ECF No. 1.) Defendant Valenzuela asked Plaintiff whether he would continue to be a problem. (ECF No. 39 at 3.) Plaintiff replied "no" and was escorted back to the building. (*Id.*)

When returning to his cell, Plaintiff noticed that SWAT personnel were discarding his personal property during the search and Plaintiff brought this to the attention of Defendant Valenzuela. (ECF No. 1.) Plaintiff was again escorted outside and placed against the hot wall. (*Id.*) SWAT personnel threatened to keep Plaintiff in that position until the entire search was over. (*Id.*) Plaintiff alleges that Defendant Valenzuela was personally present while Plaintiff was forced against the hot wall. (ECF No. 39.) Plaintiff alleges that his chest was flushed red from the heat of the wall and that the pain was severe; on a scale of one to ten with ten being the worst, Plaintiff claims the pain was an eight. (*Id.*)

After Plaintiff was returned to his cell for the second time, Plaintiff's cell-mate began sliding paper and trash out from under the cell door. (ECF No. 39 at 6 and ECF No. 69 at 11.) SWAT personnel came to the cell and blamed Plaintiff for the paper outside the door. (*Id.* at 7.) According to Plaintiff, SWAT personnel escorted Plaintiff outside to the staging area for a third time. (*Id.* No. 7.) Defendant Valenzuela first asked Plaintiff if he was taking any medication, and Plaintiff replied, "no." (*Id.*) Defendant and another officer

1  then placed Plaintiff in a hot, parked van, with the doors closed. (*Id.*; ECF No. 1.) SWAT
2  personnel then mocked Plaintiff about how hot it must be inside the van. (ECF No. 39 at
3  14.)  Plaintiff claims he was sweating so much that he could not see.  (*Id.*; ECF No. 1.)
4  Plaintiff then heard someone outside the van asking him if he was "ok" or "still alive."
5  (ECF No. 39 at 14.)  When Plaintiff failed to respond, he was removed from the van. (*Id.*;
6  ECF No. 1.)  Plaintiff estimates that he was in the van for approximately thirty to forty-five
7  minutes. (ECF No. 39 at 10.)

8  Upon exiting the van, Plaintiff stumbled and required assistance getting back to the
9  housing unit.  (ECF No. 39 at 14.)  Plaintiff was brought inside where he subsequently
10  passed out and fell to the ground. (ECF No. 69 at 12.)  Medical staff were called to the
11  scene and a registered nurse took Plaintiff's vitals.  (ECF No. 1.)  Defendant Valenzuela
12  asked the nurse to give him a minute with Plaintiff.  (*Id.*)  SWAT personnel then
13  surrounded Plaintiff and Defendant Valenzuela asked Plaintiff what happened.  (*Id.*)
14  Plaintiff could not answer.  (*Id.*) Defendant Valenzuela then began calling Plaintiff a "punk
15  b*tch" until Plaintiff passed out.  (*Id.*; ECF No. 39 at 15.)  Plaintiff states he is uncertain
16  how long he was unconscious. (ECF No. 39 at 14.)  Plaintiff was taken to the facility
17  medical clinic where he remained for a few hours. (ECF No. 66-3 at 24.)

### III. LEGAL STANDARD ON SUMMARY JUDGMENT

19  Summary judgment is proper where there is no genuine issue of material fact in dispute
20  and the moving party has shown it is entitled to judgment as a matter of law.  *Bias v.*
21  *Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing FED.R.CIV.P. 56©).  Under summary
22  judgment practice, the moving party always bears the initial responsibility of informing the
23  district court of the basis for its motion, and identifying those portions of "the pleadings,
24  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
25  any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*
26  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED.R.CIV.P. 56c); *Zoslaw v. MCA*
27  *Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  The "purpose of summary judgment is to
28  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Bias*, 508 F.3d at 1218. To avoid summary judgment, the non-moving party is "required to present significant, probative evidence tending to support h[is] allegations," *Bias*, 508 F.3d at 1218 (citations omitted), and must point to some evidence in the record that demonstrates "a genuine issue of material fact [which], with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56; *Celotex*, 477 U.S. at 323; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). To "defeat a summary judgment motion ..., the non-moving party 'may not rest upon the mere allegations or denials' in the pleadings." FED.R.CIV.P. 56(e); *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (opposing party cannot rest solely on conclusory allegations of fact or law). Instead, the non-moving party "must establish the existence of a genuine factual dispute on the basis of admissible evidence; bare allegations without evidentiary support are insufficient to survive summary judgment." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 n.14 (9th Cir. 2008).

However, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255; *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) (The nonmoving party's declaration or sworn testimony "is to be accepted as true .... [The non-movant's] evidence should not be weighed against the evidence of the [movant].") (citation omitted). All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587; *Anderson*, 477 U.S. at 255). At the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005); *see also Hoover v. Switlik Parachute Co.*, 663 F.2d

964, 968 (9th Cir. 1981) (finding district court erred in granting summary judgment when the affidavits and other evidence raised credibility issues); *United States v. Two Tracts of Land in Cascade County, Montana*, 5 F.3d 1360, 1362 (9th Cir. 1993) (reversing district judge's decision to grant summary judgment based upon an assessment of nonmoving party's credibility).

## IV. DISCUSSION

At the summary judgment stage, the Defendant, as the moving party, bears the burden of proving no material facts are in dispute. FED.R.CIV.P. 56. Accordingly, Defendant must demonstrate Plaintiff does not posses adequate evidence to establish he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. Specifically, Plaintiff contends Defendant Valenzuela violated his Eighth Amendment right to be free from cruel and unusual punishment in two ways. First, Plaintiff alleges Defendant Valenzuela subjected him to inhumane conditions of confinement by acting with deliberate indifference towards Plaintiff's health and safety when he confined Plaintiff in a hot, unventilated van. (ECF. No. 1.) Second, Plaintiff alleges Defendant Valenzuela used excessive force in violation of the Eighth Amendment when one of his subordinates held Plaintiff against a hot wall. (*Id*.) The Court addresses each claim separately below.

**A.     The Hot Van Incident: Alleged Inhumane Conditions of Confinement Violation**

**1. Parties' Arguments**

The parties agree that Plaintiff was held in a van on the day in question. The parties also agree Plaintiff needed medical attention following his confinement in the van. Defendant Valenzuela, however, maintains in his declaration that he was justified in placing Plaintiff in the van because: (1) Plaintiff was only inside the vehicle for fifteen minutes, (2) the doors were open, (3) an officer was assigned to check on Plaintiff every five minutes, and (4) Plaintiff was placed in the van for safety and security reasons. (ECF No. 66-3 at 5-6.)

Plaintiff contends Defendant Valenzuela deprived him of humane conditions of confinement and subjected him to cruel and unusual punishment by placing Plaintiff: (1) in

a van for thirty to forty-five minutes, which is supported by the declaration of Plaintiff's cellmate, Lamont Stewart;[8] (2) with the doors closed; (3) in one hundred degree heat, which is supported by weather records.[9] (ECF No. 69.)

## 2. Standard of Review: Inhumane Conditions of Confinement

The Eighth Amendment prohibits both the imposition of cruel and unusual punishment and inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Conditions of confinement claims require extreme deprivations that are sufficiently grave to deny the minimal civilized measure of life's necessities. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "An Eighth Amendment claim that a prison official has deprived [prisoners] of humane conditions of confinement must meet two requirements, one objective and one subjective." *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The prisoner must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir.2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Each requirement will be analyzed separately below.

### I.     The Objective Requirement: Sufficiently Serious Deprivation

Under the objective requirement, conditions of confinement must pose a substantial risk of sufficiently serious harm. *Farmer*, 511 U.S. at 834. The conditions of a prison may be restrictive and harsh, but officials have the duty to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The Court may consider the circumstances, nature, and duration of the deprivation to determine whether the risk of harm is sufficiently serious. *Lewis*, 217 F.3d at 731.

Defendant Valenzuela states he placed Plaintiff in the van, with the doors opened, for only fifteen minutes. (Doc. No. 66-3 at 22.) Defendant submitted his declaration and

---

[8] See March 13, 2014 Stewart Declaration, ECF No. 69 at pp. 11-12.

[9] See Weather History for Imperial CA on July 8, 2008, ECF No. 69, Exh. H.

the holding cell log sheet[10] as evidence to support his position. (Doc. No. 66-3; Exh. B at 20.) Plaintiff, however, contends Defendant Valenzuela locked him in a van for thirty to forty-five minutes and that the van doors were closed. (ECF No. 69. at 11-12.) Plaintiff was only removed from the van after he failed to respond to an unidentified guard who asked from outside the van whether Plaintiff was "still alive." (*Id.*) Plaintiff submitted and signed under the penalty of perjury a response in opposition (ECF No. 69) to Defendant's motion for summary judgment and a response to Defendant's interrogatories (ECF No. 39 at 4), both of which support Plaintiff's account of the confinement. *See* Fed.R.Civ.P. 56C. (explaining that in resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.) Plaintiff also submitted a weather report from the day in question which demonstrates the outside temperature at the time of the incident was one hundred eleven degrees. (ECF. No. 69.) A reasonable inference to be drawn from this evidence suggests that the van's internal temperature may have been even hotter regardless of whether the van's doors were closed or open. *See Matsuhita*, 475 U.S. at 587. Plaintiff further submitted the declaration of his cell mate, which states Plaintiff was in the van for forty minutes, not fifteen – and that Plaintiff was yelling out for help. (ECF. No. 69 at 11.)

Extreme heat conditions can be sufficiently serious to satisfy the objective requirement of an Eighth Amendment claim. *See Maldonado v. Youngblood*, 2013 WL 322089, *4 (E.D. Cal.) (court found locking prisoner in a transportation vehicle for three to four hours with no ventilation and no water, with temperatures allegedly reaching ninety degrees inside the vehicle constituted a substantial risk of serious harm); *See also Pitcher v. Wackenhut Corp.*, 2007 WL 2695407 *6 (D. Nev.) (where prisoner was placed in a van holding cell with temperatures exceeding one hundred degrees, court found the risk of harm, especially the allegation of dangerously high temperatures in the van, sufficiently serious to satisfy the objective requirement of an Eighth Amendment claim.)

---

[10]The holding cell log sheet details Plaintiff's time spent in the van and five-minute interval checkups by an officer.

At the summary judgment stage, the moving party must establish that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendant attempts to do so by providing a sworn declaration and the holding cell log sheet to contradict Plaintiff's account of his confinement in the van.  Plaintiff, as the non-moving party, must establish, with evidence beyond the pleadings, that there is a genuine issue of material fact. *Celotex*, 477 U.S. at 324. Plaintiff submitted his response in opposition to Defendant's motion for summary judgment and his response to Defendant's interrogatories.  Plaintiff also submitted the sworn declaration of his cell mate. These submissions contradict Defendant's account of the confinement and establish a genuine issue of material fact.  Further, it is undisputed that Plaintiff needed medical attention following his confinement in the van.  A jury could reasonably infer that Plaintiff's need for medical assistant is consistent with heat exhaustion and is supported by the weather report submitted by Plaintiff.  At this stage, the evidence of the nonmoving party is to be believed. *Anderson*, 477 U.S. at 255.  Further, the nonmoving party's declarations or sworn testimony are to be accepted as true. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  Accepting Plaintiff's evidence as true, which the Court must do, **IT IS RECOMMENDED** that the Court find there is a genuine issue of material fact for the jury to decide on the issue of whether Plaintiff faced a substantial risk of serious harm as required by the objective requirement of his Eighth Amendment claim.

### ii. The Subjective Requirement: Deliberate Indifference

"The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." *Allen*, 48 F.3d at 1087.  "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to [Plaintiff's] health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Whether an official had the requisite knowledge is a question of fact subject to demonstration in the usual ways, and a fact finder may conclude that the official knew of a substantial risk from the very fact that it was obvious. *Farmer*, 511 U.S.

at 826.

Defendant argues he did not act with deliberate indifference because his actions had a penological justification and were necessary to maintain order. (Doc. No. 66-1.) Defendant argues that he made the decision to place Plaintiff in the van, not as a punishment, but to avert a safety threat. (*Id.* at 14.) Further, Defendant contends Plaintiff had been disruptive all day and the van was the closest and safest place to hold Plaintiff until Plaintiff calmed down. (*Id.*) Defendant, however, does not argue he lacked knowledge of the risk of heat exposure, nor does he argue that he did not disregard the risk. Defendant only argues his actions were necessary and justified. (Doc. No. 66-1.)

Plaintiff attacks Defendant's justification argument and claims he was placed in the hot van as a form of torture and cruel punishment. (ECF No. 69 at 5.) Plaintiff refers to the incident as the "bake-em, time-out" treatment. (ECF No. 52.) As noted above, Plaintiff submitted a weather report from the day in question which indicates that the outside temperature at the time of the incident was one hundred and eleven degrees. Plaintiff argues Defendant Valenzuela knew, or at least should have known, based on Defendant's training and experience, that locking Plaintiff in such a hot van would lead to serious harm. (Doc. No. 69 at 5.) Plaintiff argues even the K-9 unit will not leave their dogs in a hot car for five minutes in such extreme heat. (Doc. No. 69 at 5.)

The essential inquiry here concerns Defendant's knowledge of the risk of harm to the Plaintiff and a subsequent disregard of that risk. In his declaration, Defendant acknowledges the extreme heat on the day of the incident. (ECF No. 66-3.) Defendant also argues he left the van door open, ordered a guard to check on Plaintiff every five minutes and only held Plaintiff in the van for a total of fifteen minutes. These precautionary actions performed by Defendant suggest he knew the internal temperature of the van posed a substantial risk of serious harm because of the extreme heat of the day. A reasonable jury could conclude from Defendant's actions that he knew the van was dangerous and disregarded the risk by ordering Plaintiff into the van anyway. A reasonable jury could therefore infer Defendant acted with deliberate indifference. Because the issue of

1 Defendant's knowledge of the risk posed by extreme heat and deliberate indifference to that
2 risk is one for the jury to decide, summary judgment is not proper at this time.  Therefore,
3 the Court **RECOMMENDS** that Defendant's motion for summary judgment as to
4 Plaintiff's Eighth Amendment conditions of confinement claim be **DENIED**.

**B.     The Hot Wall Incident - Alleged Excessive Force Violation**

### i. Supervisory Liability

To state a claim for the use of excessive force in violation of the Eighth Amendment, Plaintiff must show that prison officials applied force "maliciously and sadistically to cause harm" and not in "good faith to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  Typically, Defendants only incur liability for excessive force under section 1983 if they personally participate in the alleged event. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979).  A supervisor, however, can be "liable for constitutional violations of his subordinates" without personal participation if the supervisor "directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Defendant Valenzuela was the supervisor of the CRT; that fact is undisputed. (ECF. No. 66 at 8.)  The parties do dispute, however, whether Defendant was present and thus knew and failed to prevent Plaintiff from being forced against a hot wall. Defendant claims he has no recollection of seeing Plaintiff pushed up against a wall and supports this position with a statement in his declaration. (ECF No. 66 at 14.)  Plaintiff alleges Defendant Valenzuela was present when he was forced into the wall and failed to stop this alleged excessive force.  (ECF No. 39 at 3.) Plaintiff's position is supported by his statement in response to Defendant's interrogatories. (*Id*.)  Although Defendant Valenzuela and Plaintiff offer different versions of the wall incidents, this dispute is immaterial and unworthy of consideration by a jury *unless* Plaintiff has provided evidence to demonstrate Defendant's subordinate applied malicious and sadistic force as required for an Eighth Amendment violation.

### ii. Standard of Review - Malicious and Sadistic Force

To determine whether the use of force was malicious and sadistic, a court may consider: (1) the extent of injury suffered by a prisoner; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

First, the court looks at the extent of the injury suffered by the Plaintiff. It is undisputed that the extent of Plaintiff's injury was a "flush-red" chest. (ECF No. 39 at Interrogatory Response No. 5.) This is a minor injury and Plaintiff has not provided any medical evidence in opposition to the motion for summary judgment to indicate that he suffered serious harm, such as burns, from being forced against the wall. *See Hudson*, 503 U.S. at 9-10 (explaining the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force.) Accordingly, the undisputed evidence of minimal injury weighs in favor of finding there was no use of malicious and sadistic force.

Second, the court looks at the need for the use of force. Defendant states Plaintiff's disruptive behavior necessitated placement against the wall. (ECF. No. 66-1 at pp. 12-13.) Plaintiff does not dispute he was escorted outside due to perceived unruly behavior. (ECF. No. 39 at Interrogatory No. 3.) Because the undisputed evidence indicates there was an admitted dispute between Plaintiff and the prison guards, this factor weighs in favor of finding there was a need for the application of force. *See LeMaire v. Maass*, 12 F.3d 1444, 1458 (9th Cir. 1993) (concluding that as long as an inmate "engages in violent and disruptive behavior, prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners from such violent inmates").

Third, the court looks at the relationship between the force needed and the force used. Case law indicates the applied force must be balanced against the need for that force.

*Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir.1994). Defendant argues Plaintiff was placed against the wall to restore order. (ECF. No. 66-1 at p. 13.) Plaintiff states the pain of being placed against the hot wall was an eight on a scale of one to ten. (ECF. No. 39 at Interrogatory No. 5.) Plaintiff also admits he was forced against the wall for five to ten minutes. (*Id.* at Interrogatory No. 4.) The force applied was painful to Plaintiff. However, it was not prolonged. The brevity of the force applied weighs in favor of finding the five-to-ten-minute use of force was balanced with the need for force.

Fourth, the court looks at the threat perceived by the responsible officials. Defendant argues the setting was tense, as inmates were all escorted outside in order for prison officials to search their cells. (Doc. No. 66-3.) Plaintiff does not dispute that inmates were moved outside so that their cells could be searched. [ECF No. 69 at 11.] It was not unreasonable for prison officials to view uncooperative inmates outside of their cells as a threat to prison security. Accordingly, this factor weighs in favor of finding the existence of a reasonably perceived threat.

Finally, the court looks at whether officials took any effort to temper the severity of the force. Defendant Valenzuela argues that he does not recall seeing Plaintiff being placed against a wall, and that he did not put Plaintiff against a wall. [ECF No. 66-3 at p. 4.] As mentioned in the supervisory liability section above, Plaintiff states Defendant Valenzuela was present at the time Plaintiff was pushed into a wall and did nothing to prevent it. [ECF No. 39 at Interrogatory No. 2.] Because Defendant Valenzuela was either: (1) not present to temper the severity of force, or (2) present and failed to temper the severity of the force used, this factor weighs against finding there was an effort to temper the severity of the force used.

Undisputed evidence for four of the five factors used to assess the use of force weigh in favor of finding that the force used against Plaintiff was not malicious and sadistic. As explained above: the impact of the wall on Plaintiff's chest was minimal; there was a need for force as Plaintiff has admitted he was disagreeable; Plaintiff states he was only held

against the wall for five to ten minutes; and the force at issue was applied to Plaintiff during a prison-wide lock down and cell search.  In order for an Eighth Amendment excessive force case to go to the jury, the evidence must go "beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" to support "a reliable inference of wantonness in the infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 322 (1986).  There is no genuine issue of material fact presented that would allow a reasonable jury to conclude Plaintiff was placed against the wall maliciously and sadistically.  The Court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** with respect to Plaintiff's claim for excessive force against Defendant Valenzuela.

### C. Qualified Immunity

Defendant Valenzuela also argues he is entitled to qualified immunity.  The defense of qualified immunity protects government officials from liability insofar as the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A court considering a claim of qualified immunity must determine: (1) whether, in the light most favorable to plaintiff, the facts alleged show the official's conduct violated a constitutional right; and (2) whether, in light of the specific context of the case, such right was sufficiently clear that a reasonable official would have understood that his conduct violated the right.  *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

#### 1. The Hot Van Incident

Viewing the evidence in the light most favorable to Plaintiff, it has been has recommended, as detailed in Section A above, that the Court find triable issues of material fact exist as to: (1) whether the conditions inside the box van's holding cell were sufficiently serious to meet the objective component of an Eighth Amendment violation; and (2) whether Defendant acted with deliberate indifference to Plaintiff's health and safety when he confined Plaintiff in the box van's holding cell.

Furthermore, established law makes clear that a reasonable officer, who was

1  admittedly aware of the day's extreme temperatures, would have understood that his
2  conduct violated Plaintiff's eighth amendment right. *See Hope v. Pelzer*, 536 U.S. 730, 738
3  (2002) (holding that handcuffing an inmate to a hitching post and inducing "unnecessary
4  exposure to the heat of the sun" violated clearly established rights under the Eighth
5  Amendment); *see e.g. Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) (recognizing
6  that the "Eighth Amendment requires that the temperature of the areas in which pre-trial
7  detainees are held or housed does not threaten their health or safety.")
8  It is therefore recommended that Defendant's request for qualified immunity on
9  Plaintiff's conditions of confinement claim be **DENIED.**

### 2. The Hot Wall Incident

The Court has recommended, as detailed in Section B above, that Defendant's motion for summary judgment on the issue of excessive force be granted. Therefore, the Court need not reach the question of whether Defendant is entitled to qualified immunity on the use of excessive force. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) (explaining that if the facts alleged do not show the officer's conduct violated a constitutional right, the inquiry is over.)

### V. CONCLUSION

This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. section 636(b)(1). For the reasons set forth above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **DENIED IN PART** and **GRANTED IN PART.**

**IT IS ORDERED** that no later than **July 7, 2014** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

///
///
///

1 **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 21, 2014**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

DATED: June 19, 2014

*[signature]*
Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court